Defendants, Joe Ford and the National Mutual Casualty Company, are appealing from a judgment that condemns them in solido to pay to plaintiff Leroy McGlothlin workmen's compensation in the sum of $13.45 per week during the period of his disability but not exceeding 400 weeks.
It is claimed by plaintiff that he sustained a hernia on his right side, rendering him totally and permanently disabled to perform work of a reasonable character, by reason of an accident occurring on October 24, 1939, while loading logs on a truck for his employer, Joe Ford.
The employer at the time was an independent contractor engaged in cutting and hauling timber belonging to the Frost Lumber Industries.
Defendants, in this court, insist that plaintiff has not made out his case with legal certainty, particularly that he has failed to satisfactorily prove the receiving of a hernia on the date and in the manner alleged.
Plaintiff, according to his testimony, pursued the vocation of driving log trucks and of loading and unloading logs. For a long period of time prior to October, 1938, he worked for the Louisiana Central Lumber Company. His employment with defendant Joe Ford commenced in March, 1939, and continued until October 24, 1939.
On the last-named date about 2:30 P.M. o'clock and while so employed, he, so he testified, was attempting to roll a crooked log that lay cut in the woods, preparatory to loading it on the truck, when the blade of the cant hook then being used slipped from the log. Thereupon he fell backward with the hook's handle across his stomach; and he experienced a sickly feeling and a stinging and burning sensation in his right side just above the inguinal ring. He and his co-worker Willie Marshall succeeded in loading the log, and they drove the truck to Montrose, Louisiana, their destination. On arriving there, he went to see Dr. Parrott, the doctor for the Frost Lumber Industries.
During the same afternoon, complaint of the injury was made by him to the log scaler of the mentioned company and to others. This scaler and at least one other person testified about hearing the complaint and that a bulge in his right side was noticed.
After visiting Dr. Parrott's office seven or eight times without obtaining satisfactory medical attention, plaintiff further said, defendant Ford sent him to Dr. Texada in Alexandria, Louisiana, assertedly the doctor for the defendant insurance company. This physician made an examination of plaintiff; however, he was not called as a witness to give testimony on his findings.
Plaintiff, at his request, was later examined by Dr. C.R. Reed and Dr. M.H. Phelps of Natchitoches, Louisiana. Each of these physicians saw him separately and on two different occasions. Both found the existence of a small bulge and were of the opinion that he was enduring a slight, incomplete hernia. They agreed, just as plaintiff had complained, that his condition rendered him unable to perform heavy work.
Willie Marshall, plaintiff's co-worker, did not give testimony on the trial of the case. It appears, however, that plaintiff did everything possible to obtain such evidence. Regarding his attempt, he testified:
"Q. Willie Marshall, the man who was present when you were hurt did you have him summoned? A. Yes, I did, and I mailed the summons myself.
"Q. He had moved out of Montrose at the time the suit was set for trial? A. He had. *Page 755 
"Q. Where did he move? A. It is between Slagle and Simpson.
"Q. What parish? A. Vernon.
"Q. In addition to mailing him the summons did you make any effort yesterday to have him here? A. I drove out there last night and got information that he had gone to Texas.
"Q. Did you and I go out there in my car? A. I did."
Much reliance is placed by defendants on the evidence given by Dr. Fred H. Mecom. This person engaged in the practice of medicine for many years at Clarks, Louisiana, and was the chief resident physician for the Louisiana Central Lumber Company which had six or seven hundred employees. Scores of them were examined by him each month.
Dr. Mecom testified that plaintiff, while working for the Louisiana Central Lumber Company, came to him on October 20, 1937, complaining of great pain in the right side in the region of the inguinal canal, and stating that the injury was caused by a cant hook while logs were being handled. An examination disclosed considerable enlargement of the internal ring entering the inguinal canal; and in the treatment of the condition, rest was recommended. For several weeks compensation was paid the employee, after which permission to return to work was given by the physician.
Plaintiff contradicted the testimony of Dr. Mecom as to the kind of examination made and the finding on October 20, 1937. He said that he was then examined above and along the right hip, and not in the inguinal canal region, and that only a strained muscle was found. Because of this injury he remained idle for several weeks and was paid compensation.
Dr. Mecom further testified that on December 3, 1940, which was after the filing of the suit and about the time of the first examinations by Drs. Phelps and Reed, he again examined plaintiff and noticed no change from the condition existing in October of 1937. On neither occasion did he observe a bulging, such as was found by the other two physicians; and in this connection he said: "If there was a slight bulge there I would say the intestine had begun its descent and that he actually had a hernia, but I saw no condition of this kind."
Under direct examination Dr. Mecom also stated that at the time of the last examination there was no reason why plaintiff could not work; yet when cross examined he took the position that such claimant would not be accepted by him for employment to unload logs unless an operation was undergone.
The evidence, considered as a whole, is convincing that from and after October 24, 1939, the date of the alleged accident, plaintiff possessed an incomplete, right inguinal hernia that prevented his performing the heavy work to which he was accustomed. Furthermore, it is clear that prior to that time, for a number of months, the duties of his logging employment were regularly and efficiently conducted without any complaint whatever. These facts and circumstances, together with others above discussed, support the holding of the trial judge that plaintiff has proved his case with the required legal certainty; and we cannot say that manifest error has been committed.
The judgment is affirmed.